231058, Match Group v. Beazley Underwriting Limited. Mr. Serretta. Good morning, Your Honor, and may it please the Court, my name is John Serretta of Day Pitney for the appellant Beazley Underwriting Limited. With me at counsel table is my colleague, Jonathan Zellig. Our submission here is that the letter John Mellis Moen's litigation counsel sent to Tinder was a claim, a written demand for money under the insurance agreement between Beazley and Tinder's parent corporation. And on that basis, we ask the Court to reverse and to remand for further proceedings. We think that conclusion follows from a straightforward reading of the letter that begins at page 145 of the joint appendix. That says right in the second paragraph that it's asserting a claim, setting out Mr. Mellis Moen's claim. A little later on in the letter, it says that this is a claim for which, under California law, substantial damages will be recovered. It goes on to provide what those damages would look like. Lost recoupment of revenue or profits, punitive damages, attorney's fees, other costs. It's all laid out in the letter and damages are being- Let's say that we have a bunch of claims and some of these claims would allow for money damages, but we'd like to amicably resolve the claims. It doesn't necessarily say that it has to be through money, right? It says maybe he wants credit, maybe he'll be persuaded that actually he doesn't have a strong claim. So if the parties chose the language it has to be a demand for money, why shouldn't we honor that? Well, the District Court did note that it's possible, and I acknowledge it's definitely possible theoretically, that there could be a settlement for something other than money, but if you look at the letter, the only thing it's talking about is money. The letter is exclusively consumed with money. It does say, it has a line in there, I acknowledge, that says if you want to correct the record, then have your CEO put an affidavit in under oath. If you disagree with anything we're saying, okay, you can go ahead and do that, but then right after that it says, unless we start settlement negotiations within the next 14 days, we will bring a lawsuit. So very similar to what this court, in a summary order, albeit set in pine management recently, it's laying out a claim for damages. Well, does it matter that it's only talking about money? So if the letter had said either give me money or some kind of credit for my idea, and then I'll settle my claim, would that be not a demand for money? I think that would be a different case if it had the disjunctive or. If it was and, I think it would certainly be a demand for money and other stuff, which is similar to what was implied. So if you say that if it said give me money or credit, it wouldn't be a demand for money, then if we could read this letter as saying, well, we could resolve this through either one of those means implied, doesn't that make this the same case as that? No, I don't think so. I don't think that's a fair reading of the letter, and in any event, certainly one of the things it's demanding is money. I think the way I think about this is if it had one more sentence, I think there would have to be agreement by everybody that if it had a sentence that said, here's our claim, we have a substantial damages claim under California law, unless we start settlement negotiations in 14 days, we bring a suit. If it had one other sentence that said our initial offer is $1 billion, then I guess that would have to be a demand for money. But that is no different than this letter, because obviously the initial demand invites a response, and there's going to be a discussion when we get down to brass tacks. Both are demands for money. That's our submission. Well, it certainly entertained the fact that prior California juries had awarded, quote, substantial sums. Yes. So, I mean, obviously somebody was thinking, who was writing this letter, putting this letter together, was thinking about cash. Exactly right, Your Honor. Yeah, I think it is – the letter is consumed with money. It has a very, you know – We acknowledge that there's not an express request for money, right? There is – no, it doesn't have that sentence. We think that the contract is ambiguous when it says there needs to be a demand for money or services, whether it means an express demand or a kind of sort of implied demand. What would we do with that? I mean, don't we usually construe a contract against the insurer? You wouldn't in this situation. This is not the situation where you would be applying that sort of dice-loading principle, because this is not – and this is an important point – this is not like an exclusion, or this is a coverage-granting provision that will sometimes redound to the benefit of insurers and sometimes redound to the benefit of policyholders. It's not a question of coverage. It's just a question of starting the process of whether there is coverage. The claim is it does start the process, Your Honor, is correct. Right. So it's not a question of whether it is or is – if it is a claim, whether subsequently it is or is not covered. That's what I'm saying. Right. I mean, it is a claim – That's where the problem of the contra-proferendum comes in. I would agree with you that that contra-proferendum would come in in certain circumstances. Actually, why does it not favor either side? So a stricter understanding of what needs to be reported to the insurer earlier on is always going to favor the insurer, right? No, I don't think so. Because it means the insurer will be covering fewer claims. No, because a broader understanding of claim will also trigger coverage. So – That's what you're saying. You're saying that whether it's broad or narrow understanding of the word claim has other implications. But in terms of this issue that we're considering about what notice has to be provided to say that there's a stricter notice requirement does favor the insurer. We can't disentangle that from just the interpretation of the word claim. That's what we're interpreting. Right. Claim is sort of value neutral because if it is a claim, then a less well-heeled corporation that didn't have in-house lawyers and all these resources would have a really beneficial thing, which is earlier on in the process they could get a defense, they could get the insurance company involved, which does have counsel, does have resources to try to settle this thing short of a lawsuit. So for the average policyholder, the broader definition is going to be more beneficial because you can get coverage earlier if it's a claim. I assume on the district court's read, if a claim – let's say that this – the same letter came in. And let's say it came in towards the very end of the claims made period. And the insured did report it on the district courts. But it reported it the following week because it came in at the end of the week. Clearly, it would have been timely under the other definition. It clearly would have been timely based on a claim within 60 days. But if we say it's not a claim, then there's no coverage at all. Exactly right. That's what I'm saying is that this, depending on the specific facts, this could benefit insurers. It could benefit policyholders in your hypothesis. But saying something is not a claim in a claims made policy, generally that would be the pro-insurer position, right? Saying something is a claim is generally the more favorable to insured. It's just this weird wrinkle that we're dealing with, a notice issue that flows from the fact that it's a claim. But isn't the notion of what's a claim the thing that if we're going to put a finger on the scale for the insured, isn't the definition of a claim the place we put the finger? I 100% agree. The broader the understanding of claim, the more coverage and the sooner it would arise. Can I ask you a question, given that your time's running out? Let's say we review. Then we've got this thorny next issue about whether the notice was timely once the suit was filed in line with the New York statute. Now it strikes me, I think you've suggested that we would remand and let the district court wrestle with that in the first instance. It strikes me we have three options. One is to do that. One is to decide it ourselves because both sides are briefed and it's a question of law. And depending on how we rule, it could even be an alternate basis to affirm. And the third would be to certify it to New York. I'm wondering why this isn't a pretty novel and interesting question of New York law that ought to be certified. And I'd just be interested in your thoughts about that. Yeah, I agree. Those are the three options. But I would say that in a case like this, there is a lot of virtue in not doing that and just sending it back. Because the New York Court of Appeals, like this court, a very busy court. And this may not be outcome determinative. This case may never come back on appeal if it gets remanded to consider in the first instance. Appellate courts, New York Court of Appeals and this court are normally courts of review, not first view. It would be beneficial to get a district court decision before it comes back up. And so you have a situation where perhaps someday that could be certified to the New York Court of Appeals. But I wouldn't do it until it's necessary to do it. And it may never be in this case. And I think that cautions in favor of either not reaching it or just deciding it, as you say. I would say, and I'd recognize them over my time, that the statutory language on that alternative ground is pretty clear. Where it states a particular hour of the day, that you only get it to the hour of that business day. 12.01 a.m. is what the parties bargained for. But I'm over my time. And unless you have further questions. Yeah, I mean there's the whole issue whether that applies to the full provision or whether that only applies when the deadline is triggered from a starting point rather than on a set date. So I, I mean that's part of the issue here, right? That is part of the issue. Although we do think that, you know, yes, you have our argument on that. We think that since it says 12.01 specifically on the day, that it's a relatively straightforward application of that language. Okay. Thank you, Mr. Naylor. Thank you. Time for rebuttal. So we'll hear from you again. But let's turn to the athlete. Mr. That held. May it please the court. My name is Greg Van Houten for the Appellee Match Group LLC. Now, during the opening there, some time was spent talking about the policy language. But that's where I'd like to begin. Because that is both the beginning. Speak right up. Pardon? Speak right up. Okay. I'm going to start with the policy language. Because that is both the beginning and the end of the analysis under New York law. And it is precisely why Beasley's appeal fails. Because Beasley cannot point to a paragraph, a sentence, or a clause in the melismone letter that is a demand for money. Yet, that is how Beasley chose to define claim in this policy as a written demand for money. New York law says we take that. The letter says Tinder faces substantial legal exposure. There are common law claims, fraud, promissory estoppel. California has enabled plaintiffs to recover the value of a purloined idea. Substantial damages for breach of contract and idea submission cases are common. So the letter clearly says if we sue you, we're going to get a lot of money. Then it says we'd like to resolve the legal claims. What could that mean other than give us money? You don't think they were looking for money? Pardon me, your honor? You think that, what is it, seven page letter wasn't looking for money? Maybe. Maybe. But he didn't demand. Is that a reasonable maybe? The district court certainly agreed so. But the point is in the letter there was no demand for money. Why do you think they told him that substantial damages were available under California law because it was irrelevant? Well, no. Maybe because they thought they might recover them. That certainly could have been. What else could it have been? Why else would the letter have that in there? I mean, you don't tell somebody. I mean, it's been a long time since I've practiced law. But when I talked to an insurance adjuster, I used to say, you know, you've got a lot of exposure here. I wasn't just kind of passing the time of day. I was telling him that we thought that maybe we might recover a lot of money from him. Let's say that we're certain that he wanted money. Still wouldn't be a claim under this policy. Really? Yes, your honor. It would be a circumstance. That's lousy coverage. Well, no, your honor. It's actually exactly what Match bargained for here. The policy provides that there are circumstances and there are claims. Let me be clear. So you say that under the language of the policy, only a letter that says, I hereby demand $1 million from you in damages. Pay me within 10 days. Is that what it has to say? No. What does it have to say? There needs to be a demand for money. It doesn't need to be something certain. It doesn't need to be a dollar sign with a decimal point. But what if it threatened litigation in which damages were recoverable? Not a demand? Pardon me, your honor? What if it threatened litigation in which damages are recoverable? It's still not a demand for money. Really? Under this policy, it would be a circumstance. What would stop the litigation from occurring? Well, in this case, Mellis Moan gave the company two options, to contact the lawyers or to respond in writing if they disagreed with what the letter said. Right. Well, this is what it also said. Should litigation become necessary, we will carefully follow up to ensure that these obligations were fulfilled and will pursue all available remedies if they were not. In that regard, your honor- Which included compensate. Three of the pages are all about California law and the idea of a reasonable, you know, of an idea. In that regard, your honor- In that regard, your honor, I'm reminded of a case that we cited in our briefing, In Re Ancillary Receivership of Reliance. And specifically, I'm reminded of the dissent. In the dissent, the court was considering a letter much akin to Mellis Moan's letter. The attorney asserted wage claims that he said were worth probably millions. And one of the claims he asserted was conversion. The dissent in reviewing this letter said, the fact that the waiters claimed that the Yale Club, that the letter was going after the Yale Club, was guilty of conversion of their tips, is necessarily the equivalent of demanding remuneration for those tips. That's really what Beasley's argument is. Saying that we're entitled to money is the same as demanding it. The majority, this is a 2008 First Department decision affirmed by the Court of Appeals, rejected that approach. Because what matters is the text of that letter. Whether it actually contains a demand for money. Now, if Beasley had chosen a different- So if I had said this letter is an attempt to amicably resolve Mr. Mellon's legal claims by seeking a monetary, by achieving a monetary settlement, then you'd say, oh, it definitely would be a demand for money. No, your honor. It's not until there actually is a demand for money. A strong request for money. So they can't say we're attempting to amicably resolve the claims by you giving us money? They have to say, you must give us money now. And that's the only thing that would be a demand for money. There are infinite permutations, but the definition of demand, and Beasley has not opposed this, is a strong request. So we look through the letter and we ask whether there's a strong request. A demand for money is kind of a standard definition of claim. Usually when we talk about what is the definition of claim, it's one of the definitions in Black's Law Dictionary. If somebody makes a claim against somebody else, they're demanding their relief. But we don't actually require them to say, we demand you give us money. They lay out the elements of the claim and say why they're entitled to the money. Is that how we would understand the claim? No, your honor. This analysis is look at the definition of claim, compare it to the exact text of the letter. I understand, but I'm saying the definition of claim, demand for money, is a pretty common definition. It's a pretty standard definition. Well, it is a definition. Another definition that Beasley uses in some of its policies is a claim is where liability is alleged. Okay, if that was the definition, completely different story, right? Because he alleges liability in his letter. But Beasley chose a very specific definition for this policy. It defined claim as a written demand for money. Now, another portion of the policy that I want to talk about is the circumstances provision. Under this policy, a circumstance can be something significant, something where damages or injury are alleged arising out of an act, error, or omission, where legal costs and expenses can be incurred. But a circumstance is an act, error, or omission. It is the actual underlying thing that happened between the parties that might lead to a claim, right? But when you're talking about an actual letter from a lawyer saying you're liable and we expect you to give us money, maybe it's implied and not said expressly. Are we in the world of whether that's a claim or not? Whether it's an act, error, or omission that might lead to a lawyer making such a demand? Respectfully, Your Honor, it's not a claim until we cross home plate and that demand has been made. So there's not, as I understand it, the time extension for notice on circumstances the way there is for a claim. The circumstance, even if it hasn't ripened to a claim, can be covered within the claims made policy if there's notice within the term of the policy. But in contrast to a claim, which is subject to an extension for a claim that's made toward the very end of the policy period and there maybe isn't time to get notice before the policy period ends. Am I right that that extension doesn't apply? So if your theory is that the circumstance provision kind of takes care of some of the concerns we might have in protecting the insured, I'm going to ask you the same hypothetical I asked your counterpart, which is this letter comes in the Friday before the end of the policy period. And it's the exact same letter. And the following Wednesday, the insured forwards the letter to the insurer. I take it your position is that the insured in that case is out of luck because that letter doesn't constitute a claim. And therefore, there's no benefit from the extension of the notice period. Am I misunderstanding your argument? I don't believe that's correct, Your Honor. I believe that that 60-day extension reporting period also applies to circumstances that are made during the last 60 days. If you'd like, I can check that provision quickly. But I will say that notifying the carrier of a circumstance, the benefit there, one, it's discretionary. The policyholder does not have to report a circumstance. But if it does, what that does is it anchors coverage in that particular policy period. And that could be advantageous to the insured. It could be disadvantageous. It could be advantageous if maybe those limits haven't eroded yet. It would be disadvantageous if there's a deductible or a self-insured retention in that policy. So this decision that policyholders make as to whether to notify a carrier of a circumstance is a very important decision and one that they take extremely seriously. And to erode that line between circumstances and claims by saying, oh. But they knew about the circumstance from the time they first, from the time they get the letter. I mean, the letter doesn't have any advantage to it, right? Well, I don't want to mix up Judge Robinson's hypothetical. But the circumstances would have existed long before the letter, wouldn't they? The circumstances existed before the letter? Yes. And I would say it was still a circumstance. The letter may have confirmed the circumstances, but the circumstances would have existed long before the letter. Circumstances, yes, existed from that meeting at the mall, right? Circumstances were still present when that letter. It was an assertion by him to somebody that he was entitled to money. Sure. Now, let me go ahead and finish your answer to Judge Robinson's question. And I guess what I'd ask, because I realize time is running short. If you find someplace in the policy that says that reporting for circumstances extends beyond the policy period, maybe just do a short letter to us afterwards and tell us that. Because my read of the policy is that if they become aware of a circumstance during the policy period, then they can give written notice of the circumstance, and it will be covered if it ripens into a claim. I didn't see that that extended beyond. And it's an interesting question. I have another way to address your concern, Your Honor. Okay. If there's no—the hypothetical that you're offering does not consider a claim being made during the policy period, right? So now what you're really talking about is there could be a claim made during the next policy period, right? Well, no. The question is whether it is a claim or not, right? And that's—in the hypothetical, it is a claim made during the policy period if you take the other position. It's not if you take your position. What I'm saying is if that letter were a claim during the very end of the policy period, the policyholder would have an extra 60 days to report it. If it's not a claim, there's really nothing to worry about because the claim that might come in the future, it would be made during the next policy period. And as long as the policyholder reports that claim on a timely basis, there's coverage. Assuming they have coverage in the next policy period, I mean— Of course. Of course. But any way you slice it, the policyholder's covered in this instance, no matter the decision it makes. Answer the question that we talked about the three options. Let's assume you lose on this issue. The three options for dealing with this New York statute and the timeliness of the reporting. What do you think we should do if we were to get to that and why? Decide it now. And that's for two reasons. One, the issue is—and this comes from the Booking v. General Starr decision, Second Circuit. It's purely legal. It's fully briefed. It's a matter of law. It can be decided now and for purposes of efficiency. But isn't it a matter of New York law that really is writing on something of a blank slate as to the applicability of this minute-by-minute comparison to the situation? Respectfully, I don't think so, Your Honor. I think what we're advocating for is a straightforward textual interpretation of the statute. Apply it as it's written. If we were to decide that this were a claim, that it's untimely, then the only question is whether there was a modification of the agreement as to whether there were—your asserted defense of that there was a modification, that you didn't have to notify of those types of claims that at the time that you received it you thought were de minimis or not important. I might be misunderstanding you, Your Honor, but no. If the court were to find— Well, if we reverse, then this is not—then this is a claim, right? On the claim issue, yes, but there is this alternate grounds for affirmance that the court can and should reach if the court were to find that that letter is a claim notwithstanding the fact that it does not contain a demand for money. But, well, if it is a claim, it's assertive. You don't get the benefit of the—we don't get into the mailing rule, do we? We do. In fact, that's the only way that we do reach that alternative grounds for affirmance. The statutory question is if this court were to find that that letter, that circumstance, is actually a claim. But the letter is February of 2017? 2016. 2016. And that's not within the—is that within the extension period? That's during the policy period. I understood. But the extension, where the timing of the notice comes, I thought was relevant with regard to the notice of the commencement of the litigation. It is, Your Honor. Well, sorry. What Beasley's argument is is that because the claim was made, they say the letter was a claim, right? And the letter was sent in February of 2016. They say that notice had to be provided by Saturday, August 20, 2016. So if we assume that it's a claim, then right. All right. Fair enough. Okay. Can I just—you keep talking about how Beasley chose this language in the contract. So lawyers can write letters like this that say you have lots of exposure. We want to settle this up front. And what they're basically doing is asking for money, but maybe they don't say so up front and be more amicable about it. Why would Beasley want to say that that kind of a letter is not subject to a notice provision? Why would you choose that kind of a system where you could have a letter that actually indicates a whole lot of legal exposure, but it's not required to be shared with the insurer? Policyholders bargain for the discretion, the discretion of whether to report a circumstance. More reporting means more transaction costs, means more claims. But it's not that Beasley chose that language. You're saying you bargained for it. Oh, that is a common feature of a claims-made-and-reported policy, this distinction between discretionary circumstances and mandatory reportable claims. And here, the definition of claim that Beasley chose is a written demand for money. So we look at the writing, right, what the writing actually says. No, I get that. Okay. Thank you very much, Mr. Van Houten. I'll turn it back to Mr. Sirota. Thank you. Thank you, Your Honors. Just very briefly, first, on the notion of this particular language, written demand for money, I just want to push back on the idea that that's somehow an unusually narrow language. We cite a bunch of cases. It's a pretty standard definition. And saying that this is not a claim would have widespread effects throughout the industry. We cite a bunch of cases where, you know, you have your threat of litigation. You set out a claim for damages. It doesn't specifically say our opening offer is a jillion dollars. But it's still a demand for money. And I don't see how this court can go the other way without basically disagreeing with all those cases. On the circumstance provision, I think that we thought that here there's a contractual provision that defines it in a kind of narrow way. We kind of are understanding demand for money to be like an explicit demand for money. Sure, but I'm not distinguishing those cases, right? Not the cases that use the exact same language. I mean, the ones that say written demand for money or services, basically verbatim. Evanston versus Gabb, the New York Appellate Division case. There's a Ninth Circuit case we cite, REMAX. You know, we're talking about written demand for money. And we cite a bunch of them. And they all have that same language. I also want to talk about notice of circumstance just for one second. Notice of circumstance is a situation where, you know, something has happened in the world. A data breach or an event that may someday lead to claims. And then you can give notice of that circumstance. Here we are down to brass tacks. Is this letter that says Mr. Mellis Mullen has a claim for which California law provides substantial damages. Is that going to be a claim or not a claim? And then finally, I just want to go back very briefly to what you do if we win on this issue. When you're talking about an issue of New York state law, there's a lot of virtue, I would submit, in just going slow. Not deciding it or sending it to the New York Court of Appeals. Because on remand, as Your Honor pointed out, there's going to be this oral modification issue that can go through discovery. There's a lot of different grounds on which the case ultimately might shake out. Do you even get to the oral modification issue if you lose on the notice issue? No, but I... If notice is timely under New York law, even assuming that the claim occurred way back when, doesn't that end the case? Right, but what I'm thinking is this case goes back down. There's discovery. There's summary judgment briefs. And then the court has a menu of options of different ways that this thing could shake out in a summary judgment motion. And maybe it's outcome determinative, this notice provision, but maybe it's not. You're saying the district court did decide there was a modification, so regardless of what New York law says, they get coverage. That's what I'm saying. I mean, we will strenuously disagree with that on remand, of course, but I'm just saying, why? In fact, the district court said that there was a modification, right? I mean, I take it your position is that there needs to be discovery on that question. No, I think that, well, I read the district court to be saying that there's a question on the pleadings, and now we're going to do discovery and see what really happened on the ground after we look at the documents and the testimony and all that, and we're prepared to defend that vigorously. The only point I'm trying to make is in a diversity case, there is a benefit to letting that process play out before addressing this admittedly novel question under a New York statute. Unless the court has further questions, thank you very much. Okay, thank you very much. Mr. Siretta, the case is submitted. Nicely argued. Thank you.